IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DONALD N. GALBRAITH, Executor of the
ESTATE OF NELSON GALBRAITH,

    Plaintiff,

v.

COUNTY OF SANTA CLARA; ANGELO
OZOA, M.D., individually and as an agent of
Santa Clara County,

    Defendants.

No. C 03-2506 JSW

**ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

Now before the Court is the motion of defendants County of Santa Clara and Angelo Ozoa, M.D. (collectively "Defendants") for summary judgment. Having carefully considered the parties' arguments, the relevant legal authority, and having had the benefit of oral argument, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' motion. As the parties are familiar with the facts and procedural history of this case, there is no need to recite them here, except where useful in reaching the disposition.

**ANALYSIS**

**A.    Legal Standard**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S.

317, 323-24 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

### B.     Plaintiff's 42 U.S.C. § 1983 Claims Against Dr. Ozoa

Plaintiff alleges in support of his 42 U.S.C. § 1983 ("Section 1983") claims that a county coroner, Dr. Ozoa, intentionally and acting with reckless disregard for the truth falsified an autopsy report. According to Plaintiff's Second Amended Complaint ("SAC"), Dr. Ozoa falsely stated in his autopsy report that he performed an internal examination and dissection of Josephine Galbraith's neck organs and asserted Mrs. Galbraith was strangled by an assailant. In reaching this conclusion, Dr. Ozoa allegedly ignored abundant evidence that indicated suicide. Plaintiff's SAC also describes deficiencies in the autopsy report itself indicating that Dr. Ozoa never performed the work he claimed to support his conclusion that Mrs. Galbraith's death was caused by an assailant. As a result of Dr. Ozoa's conduct, Plaintiff alleges that Donald N. Galbraith was falsely arrested and wrongfully prosecuted for murder.

In prior proceedings, the Ninth Circuit held that the above allegations were sufficient to state a claim under Section 1983. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002) ("a coroner's reckless or intentional falsification of an autopsy report that plays a material role in the false arrest and prosecution of an individual can support a claim under 42 U.S.C. § 1983 and the Fourth Amendment."). In an order dated December 10, 2004 addressing

a subsequent motion to dismiss, this Court concluded that the above allegations were sufficient to defeat qualified immunity at the pleading stage. However, in the same order, the Court noted that on a motion for summary judgment, Plaintiff would need to make: "(1) a 'substantial showing' of deliberate falsehood or reckless disregard for the truth, and (2) establish that but for the dishonesty, the challenged action would not have occurred." *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002); *see also Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995). The Ninth Circuit explained that proving "but for" causation in this context means demonstrating "the materiality of [the false] statements to the ultimate determination" of the challenged action. *Hervey*, 65 F.3d at 789. Materiality is a question for the Court. *Id.*; *see also Butler*, 281 F.3d at 1024.

Separate from qualified immunity, to succeed on the merits of his Section 1983 claims against Dr. Ozoa Plaintiff would also need to demonstrate a strong causal link. Ordinarily, the "[f]iling of a criminal complaint immunizes investigating officers ... from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981). Plaintiff may rebut this presumption by demonstrating that Dr. Ozoa "wrongfully caused the charges to be filed." *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). To do so, Plaintiff must present evidence demonstrating Dr. Ozoa made knowingly false statements or engaged in other similarly conspiratorial conduct that "were instrumental in causing the filing and prosecution of the criminal proceedings." *See id.* at 1068.

Plaintiff requested, and was given, a five-month continuance pursuant to Federal Rule of Civil Procedure 56(f) to conduct further discovery and file additional evidence in opposition to Defendants' motion. Despite being given this lengthy continuance, Plaintiff has not presented any evidence demonstrating Dr. Ozoa's conduct, even if deliberately false, was material or instrumental to the prosecutor's decision to file charges against and prosecute Galbraith.

In support of their motion, Defendants submit evidence demonstrating that Galbraith's arrest and prosecution were not caused by Dr. Ozoa's conduct. Dr. Ozoa conducted an autopsy

3

on Josephine Galbraith on September 20, 1995, two days after she was found dead in her bedroom. Mrs. Galbraith's death was initially presumed a suicide, but was later investigated as a homicide based on Dr. Ozoa's conclusions.[1] Approximately one and a half years later, in January 1997, the Santa Clara District Attorney's Office filed criminal charges against Galbraith for the death of his wife. The Santa Clara Superior Court held a preliminary hearing in April 1998, and then subsequently conducted a full trial in August 1998. The Honorable Linda Condron, who was employed by the office of the District Attorney of Santa Clara County before becoming a judge, was the prosecutor at both the preliminary hearing and the trial, and was the person responsible for determining whether to prosecute Galbraith for the murder of his wife. (Declaration of the Honorable Linda Condron ("Condron Decl."), ¶ 2.) In making the decision to prosecute Galbraith, Condron conducted an extensive examination of the evidence. She reviewed the police investigative reports, examined the statements made by Galbraith and compared his statements to those made by other witnesses and the physical evidence. (*Id*. at ¶ 5.) In particular, Condron believes that she relied extensively on the investigation conducted by Detective Michael Yore. (*Id*. at ¶ 3.) Although she examined the autopsy report by Dr. Ozoa, the details of the neck examination and dissection in Dr. Ozoa's autopsy were not central factors in her determination. (*Id*. at ¶¶ 3-5.) According to Condron, "the physical evidence as clearly viewed in the photographs of the scene, statements of Mr. Galbraith himself, and the examination by the Palo Alto Police officers and investigator George Payne, led [her] to believe that this was a case of homicide, and not a case of suicide." (*Id*. at ¶ 5.)[2]

---

[1] Defendants submit evidence demonstrating that Dr. Ozoa came to his conclusion that Mrs. Galbraith's death was a homicide based on his inspection a couple of days after the autopsy of the sash that had been tied around her neck, rather than from any observations he made during the autopsy. Plaintiff points to a discrepancy in Defendants' evidence, namely that Dr. Ozoa's autopsy report dated September 20, 1995 states that the manner of death was "strangled by assailant." (Plaintiff's Ex. 2.) However, when Dr. Ozoa came to the conclusion that Mrs. Galbraith's death was a murder or whether this conclusion was based on the autopsy is not a material fact for purposes of this motion.

[2] Condron further states:
  6. At the time of the criminal trial of Nelson Galbraith, I did not believe that Dr. Ozoa's autopsy findings would be sufficient to rebut the defense theory of suicide. I therefore decided to use Richard Mason, M.D., the Chief Medical Examiner for Santa Cruz County, as a witness at the criminal trial. Dr. Mason

4

In opposition, Plaintiff submits evidence which, if true, may support a finding that Dr. Ozoa lied in his autopsy report and in statements he made to the police investigators regarding what type of autopsy he conducted, and that it was Dr. Ozoa's conclusion that Mrs. Galbraith's death was a homicide that initially caused Detective Yore to investigate whether her death was not self-inflicted. Plaintiff's evidence may also demonstrate that Dr. Ozoa did not follow proper autopsy procedures and protocols. However, Plaintiff has not submitted any evidence creating a material question of fact regarding whether Condron made an independent decision to file charges against Galbraith one and a half years after Dr. Ozoa conducted his autopsy and Detective Yore began his investigation. While Condron reviewed and considered Dr. Ozoa's

> performed an experiment at the time of trial in which he used a sash (similar to the one found around Josephine Galbraith's neck) and blood (based on the fact that Josephine Galbraith had slashed her wrists) in order to demonstrate that it would be virtually impossible for Josephine Galbraith to strangle herself without getting blood on the sash and everywhere else on her body.
> 7. I did not rely on Dr. Ozoa's autopsy report as a significant document in making my determination to prosecute Nelson Galbraith for the murder of Josephine Galbraith, but rather made my own determination based on all of the evidence. In fact, the role of Dr. Ozoa's autopsy report was very limited: primarily it caused Detective Michael Yore to reopen his criminal investigation of Mrs. Galbraith's death. At the conclusion of Detective Yore's investigation, he recommended to me that criminal charges be instituted against Mr. Galbraith. The recommendation of the investigating officer is always one factor, but not a determinative factor, that I use in making a decision of whether to pursue criminal charges. In this instance, I also relied on additional investigation by an investigator from the District Attorney's office, the experiment and opinions of Dr. Mason and upon my own independent review and assessment of the evidence. Based on all of these factors, I came to the conclusion that probable cause existed to proceed with criminal charges against Mr. Galbraith, and I caused such charges to be filed.

(Condron Decl. ¶¶ 6-7.) Condron then submitted a supplemental declaration in which she clarified a mistake she made in her original declaration. She clarified that the statements in the first 6 paragraphs of her declaration were accurate, but that she mistakenly included the phrase "the experiment and opinions of Dr. Mason" in describing the material she relied on to conclude there was probable cause to file charges. (Suppl. Condron. Decl. ¶¶ 2-4.) She pointed out that the preceding paragraph stated that she did not consult with Dr. Mason until near the time of trial itself and that was when he conducted his experiment. (*Id*. at ¶ 4.) Condron stated that including that phase was merely a proofreading error and reiterated that her decision to file charges against Galbraith was based on "the original investigation, subsequent review by police and the DA investigators, and [her] own comprehensive review of the available evidence that resulted in the decision to file charges." (*Id*. at ¶ 5.) Reviewing Condron's original declaration as a whole, and considering the explanation submitted in her supplemental declaration, the Court concludes that Condron's mistaken inclusion in one paragraph that she relied "the experiment and opinions of Dr. Mason," among other evidence, in concluding there was probable cause to file charges is not material. It does not undermine the evidence that Condron made an independent decision to initiate criminal charges one and a half years after Mrs. Galbraith's death based on evidence other than Dr. Ozoa's autopsy and conclusions.

5

1  autopsy report and conclusions, it was not significant or central to her decision to initiate
2  criminal charges. (Condron Decl. ¶¶ 3-5, 7; Suppl. Condron Decl. ¶ 5.)
3      Plaintiff submits a declaration from a professor who states that, in his experience, "a
4  professional prosecutor works very closely with forensic pathologists in investigating murder
5  cases. This is especially true in situations where the prosecutor must first determine whether the
6  manner of death was accident, suicide, or homicide." (Declaration of Bennett L. Gershman ¶ 7.)
7  The professor opines that "no professional prosecutor would accept a homicide referral and file
8  charges without relying upon the forensic pathologist's analysis, evaluation, and conclusion ....
9  [I]n making a determination whether a death is a suicide or a homicide, a prosecutor's reliance
10 on the medical examiner's determination is often the exclusive basis for deciding whether or not
11 to file criminal charges." (*Id*. at ¶ 8.) However, this evidence speaks only in generalized terms
12 and thus, does not address or create a question of fact regarding Condron's subjective frame of
13 mind and actual decision making process. Therefore, the Court concludes that Plaintiff fails to
14 demonstrate that Dr. Ozoa's conduct, even if deliberately false, was material to the prosecutor's
15 decision to file charges against and prosecute Galbraith. *See Hervey*, 65 F.3d at 789.
16 Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's claims
17 against Dr. Ozoa based on qualified immunity.
18     Moreover, even if Dr. Ozoa was not entitled to qualified immunity at this stage, the
19 Court concludes that Plaintiff has not presented sufficient evidence to rebut the presumption of
20 prosecutorial independence. *See Awabdy*, 368 F.3d at 1068 (requiring evidence that officer
21 engaged in conduct that was "instrumental in causing the filing and prosecution of the criminal
22 proceedings" to rebut presumption). Thus, the Court grants Defendants' motion for summary
23 judgment on the claims against Dr. Ozoa on this independent basis as well.

**B.  Plaintiff's 42 U.S.C. § 1983 Claims Against the County**

25     Although Defendants' motion was directed at all the claims, the motion focused on the
26 claims against Dr. Ozoa. The Court concludes that the parties have not sufficiently addressed
27 whether the presumption of prosecutorial independence applies to Plaintiff's Section 1983 claim
28 against the County, and if not, whether there is sufficient evidence of causation with respect to

the County. Moreover, it is unclear what County policy, practice, or procedures, if any, are at issue here. Therefore, the Court denies Defendants' motion for summary judgment as to Plaintiff's Section 1983 pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), without prejudice to Defendants filing another motion addressing the issues related to the County's possible liability.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment. The Court GRANTS Defendants' motion as to Plaintiff's claims against Dr. Ozoa and DENIES without prejudice Defendants' motion as to Plaintiff's claim against the County.

**IT IS SO ORDERED.**

Dated: November 2, 2005

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE