IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD N. GALBRAITH, Executor of the ESTATE OF NELSON GALBRAITH,<br><br>  Plaintiff,<br><br>  v.<br><br>COUNTY OF SANTA CLARA; ANGELO OZOA, M.D., individually and as an agent of Santa Clara County,<br><br>  Defendants.<br>_____/ | No. C 03-2506 JSW<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE *MONELL* CLAIM** |

Now before the Court is the motion of defendants County of Santa Clara and Angelo Ozoa, M.D. (collectively "Defendants") for summary judgment regarding plaintiff Donald N. Galbraith, executory of the estate of Nelson Galbraith's ("Plaintiff") claim against the County pursuant to *Monell v. Department of Social Services,* 436 U.S. 658 (1978). Having carefully considered the parties' arguments, the relevant legal authority, and having had the benefit of oral argument, the Court hereby GRANTS Defendants' motion. As the parties are familiar with the facts and procedural history of this case, there is no need to recite them here, except where useful in reaching the disposition.

**ANALYSIS**

**A.   Legal Standard.**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).

A party moving for summary judgment who does not have the ultimate burden of persuasion at trial, must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A party who moves for summary judgment who does bear the burden of proof at trial, must produce evidence that would entitle him or her to a directed verdict if the evidence went uncontroverted at trial. *C.A.R. Transp. Brokerage Co., Inc. v. Darden*, 213 F.3d 474, 480 (9th Cir. 2000).

Once the moving party meets his or her initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). It is not the Court's task to "scour the record in search of a genuine issue of triable fact." *Id.* (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 723, 735 (9th Cir. 1997).

**B.  Plaintiff's 42 U.S.C. § 1983 *Monell* Claim Against the County.**

To establish liability against the County under 42 U.S.C. § 1983, Plaintiff must demonstrate that Nelson Galbraith's ("Galbraith") injury was caused by an official policy,

2

custom or practice of the County. *See Monell*, 426 U.S. at 694. As the Supreme Court explained, in *Monell* it "decided that a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). Thus, a court's "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id*. As the Court more fully explained:

> it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Board of County Comm'r of Bryan County v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original). If "the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law," then such municipal action *is* the moving force behind the constitutional injury. *Id*. at 405. But where the alleged action was not conducted or directed by the municipality or its authorized decisionmaker, causation become more difficult to prove. Court must apply "rigorous standards of culpability and causation ... to ensure that the municipality is not held liable solely for the actions of its employee." *Id*. (citing *Canton*, 489 U.S. at 391-92.)

Here, the underlying constitutional injury of which Plaintiff complains is the filing of charges against and prosecution of Galbraith allegedly without probable cause. To prove that the County is liable under § 1983 for this alleged constitutional deprivation, Plaintiff points to specific acts by Dr. Ozoa, the Chief Medical Examiner at the time that Galbraith's wife died, and alleged "policies" or "practices" by the Santa Clara County Office of the Medical Examiner-Coroner ("County Coroner's Office"). (Opp. at 7-13.) According to Plaintiff, as a result of Dr. Ozoa's allegedly false autopsy report and Dr. Ozoa's allegedly false testimony relating to his autopsy, the County District Attorney office filed charges against and prosecuted Galbraith

without probable cause. (*Id*. at 9-13.) Plaintiff also points to alleged practices by the County Coroner's Office as acts which caused the constitutional injury. (*Id*. at 7-9.)[1]

Plaintiff contends that Dr. Ozoa, as the Chief Medical Examiner for the County at the time that Galbraith was investigated and prosecuted for murder, was a final decisionmaker for the County. (Opp. at 18-20.) However, at the hearing on the instant motion, Plaintiff conceded that Dr. Ozoa was not a final decisionmaker for the County with respect to the decision to file charges against and prosecute Galbraith - the alleged underlying constitutional violation. To be a decisionmaker for purposes of establishing the County's liability under § 1983, the official must be one who possessed final authority to establish municipal policy *with respect to the challenged action*. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-81 (1986). Accordingly, the Court finds that Dr. Ozoa was not a final decisionmaker with respect to the action challenged here.

Consequently, Plaintiff ultimately must prove that Dr. Ozoa's conduct or the alleged policies of the County Coroner's Office constituted a County policy or practice and was the "moving force" behind or bears a direct causal link to the prosecution of Galbraith allegedly without probable cause. To survive summary judgment on this claim, Plaintiff must demonstrate the existence of a material question of fact with respect to these issues. The County submitted evidence demonstrating the decision by the District Attorney's office to file charges against and prosecute Galbraith were not caused by Dr. Ozoa's conduct. Approximately one and a half years after Josephine Galbraith was found dead and Dr. Ozoa conducted an autopsy, the Santa Clara District Attorney's Office filed criminal charges against Galbraith for the death of his wife. The Santa Clara Superior Court held a preliminary hearing in April 1998, and then subsequently conducted a full trial in August 1998. The Honorable Linda Condron, who was employed by the office of the District Attorney of Santa Clara County before becoming a judge, was the prosecutor at both the preliminary hearing and the trial, and was the person responsible

---

[1] Plaintiff submitted evidence in support of these contentions to which Defendants filed numerous objections. Because this evidence not necessary to the resolution of this motion, the Court need not rule on the admissibility of such evidence at this time. Even if all of Plaintiff's evidence were admissible, it would not have changed the result in this Order.

4

for making the determination as to whether to prosecute Galbraith for the murder of his wife. (Declaration of the Honorable Linda Condron ("Condron Decl."), ¶ 2, attached to the Declaration of Alison P. Buchanan ("Buchanan Decl.") as Ex. D.)

In making the decision to prosecute Galbraith, Condron conducted an extensive examination of the evidence. She reviewed the police investigative reports, spoke with Detective Michael Yore of the Palo Alto Police Department, examined the statements made by Galbraith and compared his statements to those made by other witnesses and the physical evidence, relied on an investigation conducted by an investigator from the District Attorney's office, and independently reviewed and assessed the evidence in the case. (Condron Decl., ¶¶ 4, 5, 7.) Although she examined the autopsy report by Dr. Ozoa, the details of the neck examination and dissection in Dr. Ozoa's autopsy were not central or significant factors in her determination. (*Id*., ¶¶ 3-5, 7.) In fact, Condron described the role Dr. Ozoa's autopsy report played as "very limited." (*Id*., ¶ 7.) According to Condron, "the physical evidence as clearly viewed in the photographs of the scene, statements of Mr. Galbraith himself, and the examination by the Palo Alto Police officers and investigator George Payne, led [her] to believe that this was a case of homicide, and not a case of suicide." (*Id*. at ¶ 5.)[2]

---

[2] Condron further states:
  6.   At the time of the criminal trial of Nelson Galbraith, I did not believe that Dr. Ozoa's autopsy findings would be sufficient to rebut the defense theory of suicide. I therefore decided to use Richard Mason, M.D., the Chief Medical Examiner for Santa Cruz County, as a witness at the criminal trial. Dr. Mason performed an experiment at the time of trial in which he used a sash (similar to the one found around Josephine Galbraith's neck) and blood (based on the fact that Josephine Galbraith had slashed her wrists) in order to demonstrate that it would be virtually impossible for Josephine Galbraith to strangle herself without getting blood on the sash and everywhere else on her body.
  7.   I did not rely on Dr. Ozoa's autopsy report as a significant document in making my determination to prosecute Nelson Galbraith for the murder of Josephine Galbraith, but rather made my own determination based on all of the evidence. In fact, the role of Dr. Ozoa's autopsy report was very limited: primarily it caused Detective Michael Yore to reopen his criminal investigation of Mrs. Galbraith's death. At the conclusion of Detective Yore's investigation, he recommended to me that criminal charges be instituted against Mr. Galbraith. The recommendation of the investigating officer is always one factor, but not a determinative factor, that I use in making a decision of whether to pursue criminal charges. In this instance, I also relied on additional investigation by an investigator from the District Attorney's office, the experiment and opinions of Dr. Mason and upon my own independent review and assessment of the evidence. Based on all of these factors, I came to the

5

Plaintiff has not submitted any evidence to the contrary demonstrating the existence of a genuine issue of fact regarding what role Dr. Ozoa's conduct or any of the alleged policies by the County Coroner's Office played in the decision of the District Attorney to file charges against and prosecute Galbraith.[3]  Because Plaintiff failed to set forth specific facts supported by admissible evidence showing that there is a genuine issue of fact indicating that Galbraith suffered injury *as a result of* any official policy or custom of the County, the Court grants the County's motion for summary judgment on Plaintiff's *Monell* claim.[4]

---

conclusion that probable cause existed to proceed with criminal charges against Mr. Galbraith, and I caused such charges to be filed.
(Condron Decl. ¶¶ 6-7.)  Condron then submitted a supplemental declaration in which she clarified a mistake she made in her original declaration.  She clarified that the statements in the first 6 paragraphs of her declaration were accurate, but that she mistakenly included the phrase "the experiment and opinions of Dr. Mason" in describing the material she relied on to conclude there was probable cause to file charges.  (Supplemental Declaration of the Honorable Linda Condron "(Suppl. Condron Decl.")", ¶¶ 2-4, attached to the Buchanan Decl. as Ex. E.)  She pointed out that the preceding paragraph stated that she did not consult with Dr. Mason until near the time of trial itself and that was when he conducted his experiment.  (*Id*. at ¶ 4.)  Condron stated that including that phase was merely a proofreading error and reiterated that her decision to file charges against Galbraith was based on "the original investigation, subsequent review by police and the DA investigators, and [her] own comprehensive review of the available evidence that resulted in the decision to file charges."  (Suppl. Condron Decl., ¶ 5.)  Reviewing Condron's original declaration as a whole, and considering the explanation submitted in her supplemental declaration, the Court concludes that Condron's mistaken inclusion in one paragraph that she relied "the experiment and opinions of Dr. Mason," among other evidence, in concluding there was probable cause to file charges is not material.  It does not undermine the evidence that Condron made an independent decision to initiate criminal charges one and a half years after Mrs. Galbraith's death based on evidence other than Dr. Ozoa's autopsy and conclusions.

[3]  At the hearing, Plaintiff's counsel argued that the District Attorney did not engage in a substantive investigation during the eighteen months between Mrs. Galbraith's death and the District Attorney's decision to file charges.  However, Plaintiff did not submit any *evidence* to substantiate this argument.  Argument by counsel, standing alone, is insufficient to create a genuine issue of fact.

[4]  Even if Plaintiff could demonstrate the existence of a genuine issue of fact regarding whether Dr. Ozoa's conduct or the alleged policies of the County Coroner's Office directly caused the District Attorney to file charges against and prosecute Galbraith, Plaintiff could not maintain his *Monell* claim against the County for District Attorney's for the alleged malicious prosecution of Galbraith.  The Ninth Circuit has held that in California, a district attorney acts as a state official and not a county official when he or she decides to proceed with a criminal prosecution.  *Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir. 2000).  Therefore, the *Monell* claim against the County suffers from the additional defect that the State, and not the County, was the actor with respect to Plaintiff's alleged constitutional violation.  *See id.* at 1031.

Plaintiff argued for the first time at the hearing that the state court's decision in the preliminary hearing that there was probable cause to hold over Galbraith for trial was a

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment on the *Monell* claim against the County.

**IT IS SO ORDERED.**

Dated: April 12, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

constitutional violation and that the state court relied on the testimony by Dr. Ozoa in making this finding. Even if there were evidence in the record to substantiate such argument, similar to the problem of holding the County liable for the prosecution by the District Attorney, any action by the state court in determining the existence of probable cause would be conduct attributable to the *State*, not the County. Thus, such conduct cannot support Plaintiff's *Monell* claim against the *County*.